OPINION OF THE COURT
Jacqueline B. Deane, J.
Procedural History
On June 23, 2015, the Administration for Children’s Services (ACS) filed a neglect petition under docket number NNXXXXXX/15 against R.L. naming her children, including A.J. (who was 13 years old at the time) as subject children. ACS alleged that R.L. neglected A.J.[1] by failing to provide her with adequate supervision or guardianship in that R.L. failed to take A. J. for any medical or psychological services or notify any authorities after A.J. disclosed to her mother in May 2015 that A. J. had been raped by her mother’s ex-boyfriend during the summer of 2014. Instead, according to the petition, R.L. claimed that A. J. was making “false allegations” about being raped and failed to continue to take A.J. to once-per-week therapy sessions, despite a recommendation from New York Psychotherapy that such services occur, because R.L. was “too busy.” The neglect petition further alleged that, in June 2015, after an argument with a family member, A.J. felt that her mother did not want her in the home any longer and thus left the home. In fact, the petition alleges that the ACS caseworker observed the child A.J. crying while R.L. stated to both the ACS caseworker and the child that she did not want A.J. in the home.
*1085 On July 10, 2015, ACS filed an abuse petition under docket number NAXXXXXXX/15 naming R.L. and J.S. as respondents. The abuse petition named the same children as in the neglect petition filed solely against their mother on June 23, 2015. The newly filed abuse petition alleged that respondent J.S. was a person legally responsible for A.J.[2] and that he sexually abused her in April or May of 2014; the allegations against the respondent R.L. were identical to those contained in the previously-filed neglect petition. Thus, on July 10, 2015 the Honorable llana Gruebel dismissed the neglect petitions without prejudice “based on the superseding petitions NAXXXXXXX/15 which include the same and further allegations.” The matter was adjourned to September 17, 2015.
On August 7, 2015, R.L. filed a petition pursuant to article 7 of the Family Court Act alleging that the child A.J. was a person in need of supervision (PINS). Specifically, R.L. alleged that A. J. has absconded from the home August 2, 2015 after an argument stemming from her disrespectful behavior. Child has been socializing with an 18 year old who was just released from jail. Child was sent to her bedroom and she subsequently climbed out through her bedroom window and over a six-foot fence to leave the yard. Mother has not had any contact with child since.
The Honorable Michael Ambrosio granted R.L.’s request for the court to issue a warrant for the arrest of the child A.J. On August 19, 2015, A.J. was returned to court involuntarily on a warrant. R.L. refused to take A.J. home and the Honorable Jacqueline Williams remanded A. J. to the care and custody of ACS.
On September 15, 2015, A.J. appeared in front of this court. A.J.’s attorney orally moved to dismiss the PINS matter and the court ordered that the motion be made in writing. A.J.’s attorney filed this motion to convert the PINS proceeding to a neglect proceeding pursuant to Family Court Act § 716 on October 13th which R.L.’s attorney opposed in writing on October 19th. Finally, on October 23rd, ACS filed an affirmation in support of the Attorney for the Child’s motion to convert the PINS proceeding to a neglect proceeding and this court reserved decision.
*1086 As of October 22nd, ACS reported that A. J. was still at ACS’s Children’s Center and not yet in a foster home. The court ordered, inter alia, ACS to make an immediate service referral for A. J.’s father to assist him with parenting an adolescent who has experienced trauma and for ACS to provide immediate crisis trauma counseling for A.J.[3] ****8 The case was adjourned to December 7, 2015 for a conference.
Decision
“On its own motion and at any time in the proceedings, the court may substitute a neglect petition under article ten for a petition to determine whether a person is in need of supervision.” (Family Ct Act § 716.) “This provision reflects a recognition by the Legislature that some children who are ‘in need of supervision’ often are ‘neglected’ and are better treated that way.” (Matter of Paul H., 47 AD2d 853, 854 [2d Dept 1975], citing Comments of the Joint Legislative Committee on Court Reorganization, The Family Ct Act, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act § 716 at 301 [1963].)
The Attorney for the Child contends that the court, in the instant proceeding, should substitute a neglect petition for the PINS petition because the behavior which led R.L. to file the PINS petition (namely, A.J. running away) is “likely related to underlying neglect in her home caused by R.L.” R.L.’s attorney argues that R.L. commenced the PINS proceeding “because she needed help finding A.J. after A.J. had run away from her home, despite ACS supervision over the family under the Article 10 case.” R.L. further argues that ACS did not assist her in trying to locate A.J. when she ran away in August. The ACS attorney supports the Attorney for the Child’s motion and asserts that “ACS will offer the family the same services under both the neglect and PINS proceeding.”
R.L. states that she filed the PINS petition because ACS was not responding to her requests for assistance in locating A.J. after she left home on August 2nd. While any failure that may have occurred on ACS’s part in that regard is certainly unac *1087 ceptable, R.L. did not need to file a PINS petition to obtain assistance. Rather, she could have reached out to her assigned attorney on the article 10 case to request the intervention of this court to involve ACS in locating A.J. R.L. argues that she wishes to continue with the PINS in order for A.J. to receive appropriate and specialized services to deal with “her serious psychological issues.” However, it is worth noting that the primary allegation in the article 10 petition is R.L.’s past failure to appropriately address her daughter’s psychological trauma or follow through on taking A.J. to therapy due to her own “busy” schedule. (See petition, docket NAXXXXXXX/15.) While the court accepts that R.L. is now desirous of services for her daughter, that fact does not necessitate a PINS proceeding. Rather, as ACS states in its response to the motion, the same services—both individual and family counseling—are available and will be offered to A.J. and her parents on the article 10 docket.
R.L. argues that there has been no finding of neglect made against her with respect to the current allegations but that “there is no dispute that A.J. is a child who repeatedly runs away.” While it is true that the court has not proceeded to fact-finding on this article 10 case against R.L., the court has similarly made no findings against A.J. on the PINS matter. It is also notable that section 716 of the Family Court Act permits the court to “substitute a neglect petition under article ten for a petition to determine whether a person is in need of supervision,” not to substitute a neglect finding for a PINS petition. (Emphasis added.) Thus, it appears that the statute does not require a finding of neglect prior to making such a substitution.
The question before the court at this time is not whether A.J. ran away from home but whether that behavior appears related to or to be a result of abuse or neglect by J.S. and/or her mother, R.L. In the instant case, there is sufficient support in the allegations of the abuse petition, which was filed before the PINS petition,'that A.J.’s behavior—namely, running away from her mother’s home—was related and/or attributable to the alleged sexual abuse by J.S. and neglectful response of her mother. The caseworker—in his sworn statement attached to the article 10 petition as addendum I—asserts that A.J. ran away in June 2015. The court notes that this was only a short time after A.J. disclosed to her mother that she had been raped by her mother’s ex-boyfriend and her mother accused her of making *1088 “false allegations.” Any subsequent acts of leaving home by A.J. occurred after the filing of the article 10 petition but before A.J. received any meaningful services for any emotional harm she has experienced. It is likely that the intervention of ACS and the court system has caused further discord and tension between A.J. and her mother, given R.L.’s initial reaction to A.J.’s claims of abuse and subsequent rejection of her daughter. Therefore, A.J.’s acts of leaving home both prior and subsequent to the filing of the petition can be attributed to the acts alleged in the article 10 petition.
In the only reported decisions found, motions to convert PINS cases were denied when there was insufficient proof that the acts alleged were tied to any neglect or abuse, or the acts were too remote in time from the alleged neglect, or finally, where the child presents a danger to the community; none of this is true in the instant case. (See Matter of Alexander C., 83 AD3d 1058, 1059 [2d Dept 2011] [finding “no evidence in the record that the conduct underlying the basis for the PINS petition . . . was attributable or related to an act of abuse or neglect”]; Matter of Nicholas X., 262 AD2d 683, 684 [3d Dept 1999] [finding that the record “faile(ed) to substantiate respondent’s assertion that his admitted truancy was attributable to an act of parental abuse or neglect”]; Matter of Sandra I., 245 AD2d 655, 655-656 [3d Dept 1997] [finding “there was no indication that respondent’s misbehavior at school was related to any act of parental abuse or neglect”]; Matter of Matthew FF., 179 AD2d 928, 929 [3d Dept 1992] [finding that it was not an abuse of discretion for the Family Court to decline to substitute a neglect petition for a PINS petition where there was “no proof that respondent’s behavior as described in the petition was the result of any contemporaneous abuse or neglect” and that the abuse to which the PINS respondent was exposed was two- and-a-half years prior]; Matter of Lanair S., 206 AD2d 944, 944 [4th Dept 1994] [finding that a “child who repeatedly acts violently and who presents a danger to persons and property is a person in need of supervision, regardless of whether parental neglect is the cause of the behavior”].)
The court finds, based on the entirety of the record before it and the specific circumstances of this case, that a neglect petition against R.L. should be substituted for the PINS petition against A.J. The court agrees with the Attorney for the Child that A. J.’s behavior is likely attributable to and is substantially related to the allegations of neglect already made against the *1089 respondent mother in the article 10 petition. Furthermore, given the serious nature of the alleged abuse and neglect in this case, the court does not believe the goals of the Family Court Act to protect the needs and best interests of children are served by having A.J. bear the stigma of a PINS petition pending against her. Finally, A.J. has adjusted well to the foster home where she has been residing since October 20th and she is receiving therapeutic services. Thus, for the reasons stated above, the Attorney for the Child’s motion to convert this PINS petition to a neglect petition is granted. Given that there exists a neglect petition against R.L. that pre-dates the PINS petition, this pending article 10 petition (docket NAXXXXXXX/15) will serve as the substitute and the PINS docket will be dismissed.

. The allegations regarding the other subject children are derivative of the neglect alleged regarding A.J.

. The abuse petition against J.S. alleged that J.L. was a person legally responsible for the care of the subject children A.J., Q.J. and C.J. and the biological father of the subject child C.S.

. On September 15th, A.J. was remanded to ACS with an order that ACS was to explore A. J.’s father as a resource pursuant to Family Court Act § 1017 and granted ACS the discretion to release A.J. to his custody if he were found to be an appropriate resource. On October 14th, the intake part granted an application filed by ACS to amend the article 10 petition to add A.J’s father, S.J., as a respondent based on S.J.’s refusal to continue to care for A.J. or plan for her care and to change the status of A.J. from a release to her father to a remand to ACS.